IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2016

## STATE OF TENNESSEE v. DAVID ALAN CORBITT

**Appeal from the Circuit Court for Benton County**
**No. 14-CR-67        C. Creed McGinley, Judge**

_____

### No. W2015-01834-CCA-R3-CD  -  Filed July 19, 2016

_____

A Benton County jury convicted the Defendant of one count of rape of a child and one count of aggravated sexual battery as a lesser-included offense of a second count of rape of a child. The trial court sentenced him to thirty-five years, to be served at 100%, for the rape of a child conviction and to a concurrent sentence of ten years for the aggravated sexual battery conviction. On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his convictions; (2) the trial court erred when it instructed the jury that aggravated sexual battery was a lesser-included offense of rape of a child; and (3) the trial court erred when it sentenced him. After review, we conclude that aggravated sexual battery is not a lesser-included offense of rape of a child. *State v. John J. Ortega, Jr.,* No. M2014-01042-CCA-R3-CD, 2015 WL 1870095, at *10 (Tenn. Crim. App., at Nashville, Apr. 23, 2015), *no perm. app. filed.* As such, the trial court erred when it instructed the jury. The Defendant's conviction for aggravated sexual battery is vacated. His conviction and sentence for rape of a child is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in part, Reversed in part and remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Guy T. Wilkinson, District Public Defender; Gary J. Swayne, Assistant Public Defender, Camden, Tennessee, for the appellant, David Alan Corbitt.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Senior Counsel; Matthew F. Stowe, District Attorney General; and Bruce I. Griffey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

## A. Trial

This case arises from allegations that the Defendant molested his then five-year-old daughter, M.C.[1]  The Benton County grand jury indicted the Defendant for two counts of rape of a child.  At his trial on these charges, the parties presented the following evidence:  M.C., who was six years old at the time of trial, testified that her father, the Defendant, did something he was not supposed to do "a long time ago" but that she could not remember what happened.  M.C. eventually agreed that, when she was five years old, the Defendant had touched her in a way that he was not supposed to touch her while they were in their house.  M.C. recalled that she was in her bed "in trouble" when the Defendant called her into his bedroom.  He touched his penis to her vagina on one occasion, and, on another occasion, he put her mouth on his penis.

Shauna Rich, an investigator for the Department of Children's Services ("DCS") in Carroll and Benton Counties, testified that she began the investigation of this case after someone called a child abuse hotline with concerns about the victim.  After her office received the referral about the concern on June 24, 2014, her co-worker went and interviewed the Defendant and the victim.  The original referral concerned domestic abuse between the Defendant and his "paramour," and there was a specific allegation of abuse between the two on June 26, 2014, when Ms. Rich became involved in the case.  On June 27, 2014, Ms. Rich placed M.C. into State custody.

Ms. Rich said that she met with the family to discuss their concerns about M.C.  Shortly thereafter, another investigator from her office, Mr. Allen, attended M.C.'s forensic interview at the Carl Perkins Center, where a certified forensic interviewer interviewed M.C. about the sexual abuse allegations.  The interview was set up with the forensic interviewer asking questions, and Ms. Rich and Mr. Allen watching from another room.  The interview was video recorded.  During this interview, M.C. ran around the room and could not stay focused, so they concluded the interview.  Ms. Rich said that she gave M.C. time to settle in with her foster family and be medically assessed, and then she attempted the interview again.

Ms. Rich said that during the second interview, conducted the following month, M.C. could again not stay focused, so the interview was concluded.  At that point, Mr. Allen and Ms. Rich interviewed M.C.  M.C. disclosed that her father had put his "no-no," which she identified as his penis, into her mouth in the bathroom on the same day that he

---

[1] To protect the victim's privacy, we will refer to her by her initials only.

had also shaved the hair from her head. Ms. Rich said that she filed a "no contact" order for the Defendant and M.C.

Ms. Rich testified that she interviewed the Defendant, who told her that M.C. had molested him. The Defendant's girlfriend, Charity, accompanied him during the interview. The Defendant said that, on two occasions, M.C. had touched him. He described one incident saying that he awoke to find M.C.'s hand in his underwear and M.C. masturbating him. The Defendant described a second occasion, saying that he woke up in the middle of the night to find M.C. performing oral sex on him. He said that he called Charity at work and told her to come home, so he could talk to her about M.C. performing oral sex on him.

Ms. Rich said that she had never before in over 1,500 cases had a case where a five-year-old girl molested a grown man while he slept. Ms. Rich identified a video recording of the Defendant's interview, which the State played for the jury. In the video, the Defendant told Ms. Rich that M.C. took the covers off of him twice while he was sleeping. The first time she manipulated his penis with her hands, and the second time she placed his penis in her mouth. He said that he felt his penis go inside her mouth, and he woke up and stopped her. He then punished her for this behavior.

Ms. Rich said that the first time that the Defendant made allegations that his daughter had molested him was in a meeting on July 2, 2014, to discuss M.C.'s needs shortly after M.C. was taken into State custody. During the meeting, attended by fifteen to twenty people, the Defendant said that M.C. needed "help because she had been touching [the Defendant] inappropriately."

Ms. Rich identified a picture that she and Mr. Allen used when speaking with M.C. in August. Using that picture, M.C. made the disclosure that the Defendant had touched her genitals. Using another picture, M.C. stated that the Defendant touched her mouth with his penis. This interview occurred after the Defendant's July disclosure. After the Defendant's disclosure, Ms. Rich contacted the DCS attorney who filed for a "no contact" order.

During cross-examination, Ms. Rich testified that the Defendant sought and obtained counseling services for M.C., who was in foster care. Ms. Rich said that the Defendant had never admitted to inappropriately touching M.C. Ms. Rich said that DCS had been involved in M.C.'s life for an extended period of time and that the organization was familiar with the types of treatment and counseling services that M.C. needed.

Ms. Rich testified that, during the forensic interview with M.C., M.C. told the interviewer that the Defendant told M.C. that a man named "Michael Cooper" had

3

inappropriately touched her. M.C. said that she did not remember this touching, maybe in part because she would have been two at the time. Ms. Rich agreed that there had been multiple DCS cases involving M.C.

During redirect examination, Ms. Rich testified that she found the Defendant "very talkative" and not at all "combative" during her interview with him. Ms. Rich testified that, when she first took M.C. into state custody, M.C.'s head was shaved "all the way down," and she was dirty. Since she had been in state custody, she had begun taking "pride in the way she look[ed]," she will sit down to have a conversation and will follow directions. Ms. Rich said she was "a total different kid."

Justin Corbitt, the Defendant's brother, testified on the Defendant's behalf that, on one occasion, M.C. asked him if she could "suck [his] dick" while the two were riding in a truck with the Defendant driving. Mr. Corbitt said that after this request the Defendant stopped the truck and "whopped" M.C. for saying this. Mr. Corbitt said that the Defendant had "whooped his daughter a little rough" but that he understood that this was how the Defendant disciplined M.C. During cross-examination, Mr. Corbitt testified that he had never been accused of raping M.C.

Stephanie Corbitt, Mr. Corbitt's wife and the Defendant's sister-in-law, testified that she and Mr. Corbitt had two young children together and that she would not hesitate to leave them in the Defendant's care. During cross-examination, Ms. Corbitt testified that she was previously in a romantic relationship with the Defendant and that she still cared for the Defendant.

Charity Hamby testified that she and the Defendant were in a relationship and had been so at the time of these allegations. Ms. Hamby testified that, when the Defendant was not present, she cared for M.C., sometimes taking her on excursions to the zoo or different places. Ms. Hamby said she and M.C. "talked about everything," and she felt that M.C. would have been comfortable telling her about any alleged abuse. Ms. Hamby said that M.C. never alleged that the Defendant had inappropriately touched her.

Ms. Hamby recalled a time when DCS removed M.C. from their custody. She said that she and the Defendant worked with an attorney, attended parenting classes, and underwent drug screens in order to have M.C. returned to their care. Ms. Hamby recalled that their house was "one big room" with no walls, except for around the bathroom. She said that they had hung blankets around M.C.'s bed for privacy. She said that they each individually changed in the bathroom for privacy.

Ms. Hamby said, when she and the Defendant first arrived at the interview with Ms. Rich, they asked for an attorney. Ms. Rich told them that the interview would not

4

take very long and that they did not need one. Ms. Hamby said that the Defendant was honest and forthcoming with Ms. Rich because he wanted to get M.C. the help that she needed.

Ms. Hamby affirmed that she and the Defendant had attempted to get M.C. help in the past. Ms. Hamby recounted that, when they sought treatment for M.C., a counselor diagnosed her with Oppositional Defiance Disorder ("ODD"), symptoms of which included telling lies. Ms. Hamby said that, on one occasion, M.C. said that her brother touched her private area with his foot. Ms. Hamby said that she was present and that the touching never occurred. M.C. had also said that her grandfather had inappropriately touched her. Ms. Hamby said that this allegation was made when she and the Defendant did not have custody of M.C.

Ms. Hamby recalled the time that the Defendant called her at work to tell her that M.C. had touched him inappropriately. She said that he was "[r]eally upset" and had tears in his eyes. When she saw him, he appeared as if he had been crying because his eyes were red.

Ms. Hamby testified that M.C. attempted to look at her and the Defendant when they changed clothing. M.C. attempted to peek under the door of the bathroom or through a crack in the wall.

During cross-examination, Ms. Hamby testified that she was at work both times that the Defendant called her to report that M.C. had inappropriately touched him and that the Defendant and M.C. were home alone.

Upon further examination, Ms. Hamby said that, after the second incident of inappropriate touching, she and the Defendant brought a female into the home at the times Ms. Hamby was at work so that the Defendant and M.C. would not be alone. Ms. Hamby said that, the first time they sought help for M.C., it was because she was inappropriately touching herself at school and also lying at school.

The Defendant recalled Ms. Corbitt who testified about an incident where she caught M.C. having the dog lick her private areas.

Based upon this evidence, the jury convicted the Defendant of rape of a child and aggravated sexual battery.

**B. Sentencing**

5

At the Defendant's sentencing hearing, the Defendant's brother, Mr. Corbitt, asked the trial court for leniency for the Defendant so that the Defendant could get help for his psychiatric and drug problems. The State offered, and the trial court accepted into evidence, the presentence report. The Defendant's attorney then stated that the Defendant had graduated from high school and served in the Army, being honorably discharged after one year because of a knee injury. Further, the Defendant had no prior felony convictions.

The Defendant then apologized for his cursing outbursts during the trial, saying that he was "under the influence."

The trial court then sentenced the Defendant. It noted that in Count 1 the jury convicted the Defendant of rape of a child, a Class A felony and that, by statute, the Defendant was to be considered a Range II offender for sentencing purposes, making his sentencing range twenty-five to forty years to be served at 100%. In Count 2, the jury convicted the Defendant of aggravated sexual battery, a Class B felony. The trial court then stated:

> I don't feel like there is enough to take him completely to the maximum, but within that range the Court finds that the appropriate sentence is thirty-five years as a one hundred percent (100%) offender.
>
> Count 2, the Court is going to sentence him to ten (10) years. I don't find the grounds to run that consecutive. That[] will be concurrent, so even should the – eventually end up that that's not a lesser included, it has no real impact, other than being a conviction, so those will be concurrent.

It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence presented at trial is insufficient to sustain his convictions; (2) the trial court erred when it instructed the jury that aggravated sexual battery was a lesser included offense of rape of a child; and (3) the trial court erred when it sentenced him.

## A. Sufficiency of Evidence

The Defendant contends that the allegations against him came from a "very troubled child" and are not true. He notes that M.C. was hesitant to testify and that it took "too much prodding to get M.C. to tell her story" for it to be truthful. The State

counters that credibility issues are within the domain of the jury and cannot be revisited on appeal. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted).

"The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

7

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The jury convicted the Defendant of rape of a child and of aggravated sexual battery. Rape of a child is "the unlawful sexual penetration of a victim by the defendant or the defendant by the victim" if the victim is between the ages of three and thirteen. T.C.A. § 39-13-522(a) (2014). The evidence, viewed in the light most favorable to the State, proved that the Defendant put the mouth of the victim, who was five years old or younger at the time, on his penis. The Defendant admitted his penis was in her mouth. The jury did not err when it found that the statutory elements of this crime were met and therefore convicted the Defendant of rape of a child.

The jury also convicted the Defendant of aggravated sexual battery, which is "unlawful sexual contact with a victim by the defendant or the defendant by the victim" when "[t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4) (2014). "Sexual contact" includes "the intentional touching of the victim's, the defendant'a, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonable construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6) (2014). "Intimate parts" includes the primary genital area, groin, inner thigh, buttock or breast of a human being." T.C.A. § 39-13-501(2).

In this case, the evidence in the light most favorable to the State proved that the Defendant touched his penis to her vagina. The victim's uncorroborated testimony is sufficient to sustain the Defendant's conviction. *See State v. Collier*, 411 S.W.3d 886, 899-900 (Tenn. 2013). Further, the jury did not err when it concluded that the touching could reasonably be construed as for the purpose of sexual arousal or gratification. *See State v. Mahlon Johnson*, No. W2011-01786-CCA-R3-CD, 2013 WL 501779, at *10-13 (Tenn. Crim. App., at Jackson, Feb. 7, 2013) (citing T.C.A. § 39-13-501(6) (2010); *State v. Steven Webster,* No. W1999-00293-CCA-R3-CD, 1999 WL 1097820, at *1–*2 (Tenn.Crim.App., at Jackson, Nov. 22, 1999), *perm. app. denied* (Tenn. 2000)), *perm. app. denied* (Tenn. Aug. 14, 2013).

To the extent that the Defendant calls the victim's credibility into question, "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *Bland*, 958 S.W.2d at 659. The evidence is sufficient to support his conviction for aggravated sexual battery, and the Defendant is not entitled to relief on this issue.

## B. Aggravated Sexual Battery As A Lesser-Included Offense

The Defendant next contends that the trial court erred when it instructed the jury on aggravated sexual battery as a lesser included offense of rape of a child. The State contends that we should review this issue pursuant to the plain error doctrine and that the Defendant is not entitled to relief. Pursuant to that review, the State contends that the record does not unequivocally prove what happened below because the Defendant may have in some way consented, during discussions that were not transcribed, to the inclusion of an aggravated sexual battery charge. Further, it states that there was no clear and unequivocal breach of law because case law explaining that aggravated sexual battery is not a lesser-included offense of rape of a child was not published until after this trial.

The State correctly notes that this issue was not preserved for appeal and that we must review it for plain error. For an error to constitute plain error sufficient to merit relief, the following factors must be present: a) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is necessary to do substantial justice. *State v. Bishop,* 431 S.W.3d 22, 44 (Tenn. 2014) (citing *State v. Adkisson,* 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Additionally, "'the plain error must be of such a great magnitude that it probably changed the outcome'" of the proceeding. *Id.* 431 S.W.3d at 44 (quoting *Adkisson,* 899 S.W.2d at 642). This Court need not consider all the factors if it is clear that the defendant failed to establish at least one. *State v. Jordan,* 325 S.W.3d 1, 58 (Tenn. 2010).

The case holding that aggravated sexual battery is not a lesser-included offense of rape of a child was filed on April 23, 2015, before the trial in this case on May 11, 2015. *State v. John J. Ortega, Jr.,* No. M2014-01042-CCA-R3-CD, 2015 WL 1870095, at *10 (Tenn. Crim. App., at Nashville, Apr. 23, 2015), *no perm. app. filed.* In *Ortega*, this Court held that aggravated sexual battery is not a lesser included offense of rape of a child as a result of the amendment to Tennessee Code Annotated 40-18-110 and the explicit exclusion of part (b) of the test for determining lesser included offenses announced in *State v. Burns,* 6 S.W.3d 453 (Tenn. 1999). *See also State v. Dallas Jay*

9

*Stewart,* No. M2011-01994-CCA-R3-CD, 2013 WL 3820992, at *37 (Tenn. Crim. App., at Nashville, Jul. 22, 2013), *no perm. app. filed.*

In the case under submission, at the sentencing hearing, the trial court discussed *Ortega.* It stated:

> *Ortega,* that says that [aggravated sexual battery is] not a lesser included offense of Child Rape, which the Court finds is in violation of sense of common sense, so as far as the Court is concerned, he stands convicted of Child Rape on Count 1, Aggravated Sexual Battery on Count 2.

The trial court went on to state that it was going to order that the sentences run concurrently so that "even should . . . it eventually end up that [aggravated sexual battery is] not a lesser included, it has no real impact, other than being a conviction . . . ."

We conclude that these statements by the trial court indicate that the Defendant had not, in fact, agreed to an amended indictment in some conversations that were not transcribed. Further, it shows that the trial court was aware of the law from this Court when concluding that aggravated sexual battery was not a lesser included offense of rape of a child pursuant to the Legislature's amendment to the statute. We conclude that the remaining elements of review pursuant to the plain error doctrine are met. We further conclude, in accordance with this Court's ruling in *Ortega* and its progeny that the Defendant's conviction for aggravated sexual battery cannot stand. In *Ortega,* the defendant's conviction for aggravated sexual battery was modified to a conviction for child abuse, the next properly charged lesser included offense that was supported by the evidence. 2015 WL 1870095, at *11 (citing *State v. Swift,* 308 S.W.3d 827, 831-32 (Tenn. 2010)). This Court looked to Tennessee Code Annotated section 39-15-401(f), which specifically provides that child abuse may be a lesser included offense of "any kind of . . . sexual offense, if the victim is a child and the evidence supports a charge under this section." *John J. Ortega, Jr.,* 2015 WL 1870095, at *11.

The trial court instructed the jury on child abuse as a lesser-included offense. According to Tennessee Code Annotated section 39-15-401, child abuse occurs when a person "knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury." T.C.A. § 39-15-401(a). State v. Ducker interpreted the statue to require that the child actually sustain an injury. 27 S.W.3d 889, 896 (Tenn. 2000). Although "injury" is not defined by statute, "bodily injury" is defined as follows, and is a useful guide: "Bodily injury" includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment

of the function of a bodily member, organ, or mental faculty[.]" T.C.A. § 39-11-106(2) (2014).

This Court, in *State v. Matthew Kirk McWhorter*, also addressed this issue in the context of jury instructions, and we determined that the jury should not be instructed on child abuse when there is no evidence of a bodily injury. No. M2003-01132-CCA-R3-CD, 2004 WL 1936389, at *38-39 (Tenn. Crim. App., at Nashville, Aug. 30, 2004). We determined that evidence of the Defendant touching the victim's penis, putting his mouth on the victim's penis, and requiring the victim to put his mouth on the defendant's penis was insufficient evidence to support a charge of child abuse. *Id.*; accord *State v. John Whatley*, No. M2003-01773-CCA-R3-CD, 2004 WL 1964710, at *6-8 (Tenn. Crim. App., at Nashville, Dec. 22, 2004), *perm. app. denied* (Tenn. May 9, 2005).

In the case under submission, there was no proof that the victim suffered actual injury from the Defendant touching his penis to her vagina to support a finding of child abuse. *See also State v. Glen B. Howard*, No. E2014-01510-CCA-R3-CD, 2015 WL 4626860, at *15-16 (Tenn. Crim. App., at Knoxville, Aug. 4, 2015), *perm. app. appeal granted* (Dec. 11, 2015). As there are no remaining properly charged lesser included offenses, we are left with no choice but to vacate Defendant's conviction for aggravated sexual battery. As the trial court noted, because the sentences were ordered to run concurrently, this holding does not affect the Defendant's sentence of thirty-five years, to be served at 100%.

## C. Sentencing

The Defendant contends that the trial court erred when it sentenced him because it enhanced his sentence based upon prior misdemeanor convictions, all of which were traffic related, and because it did not mitigate his sentence based upon the fact that that he was a high school graduate who served his country in the active duty military. The State counters that the trial court did not err when it sentenced the Defendant. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of

11

discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*. at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707. The defendant bears "[t]he burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2014). The trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

A trial court's weighing of applicable enhancement and mitigating factors is "left to the trial court's sound discretion." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). "[T]he trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343. The burden of proving applicable mitigating factors rests upon the defendant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App., at Knoxville, Sept. 18, 1995), *perm. app. denied* (Tenn. Feb. 5, 1996).

Moreover, the trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate Courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

The Defendant contends that the trial court erred by giving too much weight to his previous traffic-related misdemeanor and by not giving enough weight to the mitigating factor that he spent one year in the military. As previously stated, enhancment and mitigating factors are advisory only. *See* T.C.A. § 40-35-114 (2014); *see also Bise*, 380 S.W .3d at 699 n.33, 704; *Carter*, 254 S.W.3d at 343. This Court is "bound by [the] trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346. We conclude that the Defendant's within range sentence is consistent with the purposes set out in the Sentencing Act and that it was within the trial court's broad discretion not to enhance the Defendant's sentence for his prior conviction and not to afford his military service much weight. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the Defendant's conviction for rape of a child. We reverse and vacate his conviction for aggravated sexual battery.

_____
ROBERT W. WEDEMEYER, JUDGE

13